IN RE the MARRIAGE OF:

Linda L. GREENE p/k/a Linda L. Hahn, Petitioner-Appellant,

v.

Richard V. HAHN, Respondent-Respondent.

Court of Appeals

*No. 03–3311. Submitted on briefs June 4, 2004.—Decided October 28, 2004.*

2004 WI App 214

(Also reported in 689 N.W.2d 657.)

474

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Lisa Goldman* and *Robert F. Nagel* of the *Law Offices of Robert Nagel*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Mary Anne Kircher* and *Sabina Bosshard* of *Bosshard & Associates*, La Crosse.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. DEININGER, P.J. Linda Greene appeals an order that designated her former husband, Richard Hahn, as "the person responsible for determining . . . school enrollment" for their younger son, Spencer. She

claims that the court erred in granting Richard the authority to determine Spencer's place of school enrollment because the order interferes with her right, as the child's primary physical custodian, to determine Spencer's place of residence. Linda also contends that the trial court erroneously exercised its discretion in modifying the parties' joint legal custody of Spencer under WIS. STAT. § 767.325 (2001–02)[1] because (1) the court failed to refer the parties to mediation; (2) the court did not expressly find a substantial change in circumstances from those existing at the time of the previous custody order; and (3) the record lacks evidentiary support for a conclusion that Spencer's best interest is served by his attending a private military academy instead of continuing to attend a public high school in La Crosse. We are not persuaded by any of Linda's claims of error, and we therefore affirm the appealed order.

## BACKGROUND

¶ 2. Linda and Richard were married in 1981 and they divorced in 1990. Their Minnesota divorce judgment awarded them "permanent joint legal custody" of their two minor sons. Linda, who was awarded "permanent physical custody" of the two boys, moved to Wisconsin and Richard moved to Illinois. At the time of the divorce, the parties' older son, Adam, was four years old and the younger, Spencer, was not yet two.

¶ 3. In conjunction with a motion in 1992 seeking increased child support, Linda filed the parties' Minnesota divorce judgment with the La Crosse County Circuit Court. A second post-judgment proceeding in La

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

Crosse County regarding support was initiated by Richard in 2000. He also moved in 2001 to revise the judgment "so as to award him primary physical placement of the minor children of the parties." No revision was ordered, however, because the parties resolved the placement issue by agreeing "to work together to solve the issues of concern relating to their two sons."

¶ 4. Richard again sought modification of the divorce judgment in July 2003. He moved for a court order "allowing him to enroll both of his sons at St. John's Northwestern Military Academy," which is located in Delafield, Wisconsin, for the academic year beginning in September 2003. The motion was initially heard by a court commissioner, who appointed a guardian ad litem for the now seventeen- and almost fifteen-year-old boys. The guardian ad litem recommended that Adam remain in La Crosse and attend Logan Senior High School for his senior year. A major factor in this recommendation was Adam's statement to the guardian ad litem that he would leave St. John's Academy as soon as he turned eighteen in December. The guardian ad litem also recommended that Adam sign a written contract with his parents regarding his conduct, expectations regarding his schoolwork and related items.

¶ 5. As to Spencer, the guardian ad litem recommended that he enroll at St. John's Academy "for the remainder of his high school years," as Richard requested. This recommendation was based on the guardian ad litem's conclusion that Spencer's failing grade point average as a freshman at Logan Senior High, his use of marijuana and one or more incidents of theft, all indicated that Spencer "was going down the same path as Adam, poor grades and poor choices for friends, at a faster speed than Adam." After hearing evidence at an

unreported hearing, the court commissioner entered an order that "it is in the best interests of the children that Richard . . . be designated as the person responsible for determining Spencer's school enrollment, and that Linda . . . be the person responsible for determining Adam's school enrollment."

¶ 6. Pursuant to the court commissioner's order, Richard enrolled Spencer at St. John's Academy for the fall semester. Linda requested the circuit court to hear Richard's motion de novo. The court took testimony over three days in September and early October of 2003. In addition to both parties' testimony, the court heard from a substance abuse counselor, the boys' high school principal, and from a psychologist who had met with the boys at their mother's request. At the conclusion of the testimony, the guardian ad litem informed the court that her recommendation had not changed. She continued to believe that enrollment at St. John's was in Spencer's best interest, in that it provided structure, "he's doing well, and he's also able to avoid drugs."

¶ 7. The court, in a ruling from the bench, found that, at least with respect to educational decision-making, "[t]he parents . . . rather than cooperating, are engaging in a pitched battle that puts the two kids in the middle." The court also found that both boys "are in pretty deep trouble, very deep trouble. They've already had some contact with the criminal justice system, and I suspect that unless things change drastically, one or the other, probably both, are going to spend some time in front of a judge." Although the court acknowledged that "[p]redicting human behavior is difficult at best," it noted that "past performance" is often "the best predictor." Accordingly, the court concluded that the older brother's continuing difficulties—marijuana use, legal

difficulties, ineligibility for athletics, poor academic performance—reflected poorly on Spencer's prospects for avoiding similar problems if he remained in La Crosse and in his present school setting.

¶ 8. The court then concluded and ordered as follows:

> It looks to me that unless something changes, Spencer is going down the exact same path that Adam has already started.

> . . . .

> As to Spencer, there is some time, there is some help. We can do something. And I am going to affirm the order of the family court commissioner and grant to Mr. [Hahn] the authority to determine what educational program he will follow. And if Mr. [Hahn] wants him to go to Saint John's, so be it.

The trial court subsequently entered a written order affirming the court commissioner's order. Linda appeals.

## ANALYSIS

■■■■■

¶ 9. Linda appeals the circuit court's post-judgment modification of the custody provision in the parties' divorce judgment. We are thus called upon to review a trial court's discretionary determination, which we will not reverse unless the court incorrectly applied the law, misinterpreted or overlooked relevant facts or otherwise failed to reason its way to a decision that a reasonable judge could reach. *See Keller v. Keller*, 2002 WI App 161, ¶ 6, 256 Wis. 2d 401, 647 N.W.2d 426. Although our overall standard of review is that applicable to a trial court's discretionary determination, as to

any questions of law presented, our review is de novo. *See Kerkvliet v. Kerkvliet,* 166 Wis. 2d 930, 938–39, 480 N.W.2d 823 (Ct. App. 1992). Finally, to the extent that Linda challenges any of the trial court's factual findings, she must convince us that the findings are clearly erroneous. Wis. Stat. § 805.17(2).

¶ 10. Linda's first and principal claim of error rests on her assertion that the appealed order conflicts with her rights under the parties' Minnesota divorce judgment. St. John's is a residential academy which requires its students to remain on its campus during most school days and nights, as well as on some weekends. Linda points out that by granting Richard the sole right to determine "Spencer's school enrollment," and thus permitting Richard to enroll Spencer at St. John's, the appealed order effectively gives Richard control over where Spencer will reside for a major portion of the year. This, she claims, is contrary to the provision in the parties' divorce judgment awarding her "permanent physical custody" of Spencer.

¶ 11. Linda essentially claims that the trial court lacked authority to enter the order it did, and she relies, in part, on a Minnesota statute. Because the parties' original divorce judgment gave her sole "permanent physical custody" of Spencer, she argues that the judgment permanently grants her the sole right to determine "the routine daily care and control and the residence of the child." *See* Minn. Stat. § 518.003(3)(c). Thus, in Linda's view, despite Richard's status as Spencer's joint legal custodian, he could not be granted the right to make decisions regarding where Spencer would reside because that would interfere with her sole right, as Spencer's physical custodian, to decide Spencer's residence.

481

¶ 12. We reject Linda's attempted reliance on a Minnesota statute and the provisions of the parties' original divorce judgment in this fashion. It was Linda who first filed the Minnesota judgment with the La Crosse County Circuit Court in 1992 and requested that court to assume jurisdiction for purposes of deciding a post-judgment motion to increase child support. Richard, likewise, subsequently filed motions in La Crosse County seeking to modify the judgment's support and placement provisions. Wisconsin thus became the forum for proceedings brought by either party to enforce or modify their divorce judgment, which must be treated and given the "same effect" as if it were a Wisconsin judgment. *See* WIS. STAT. § 806.24(2) ("A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating or staying as a judgment of a circuit court of this state . . . ."); WIS. STAT. § 822.15(1) (requiring similar treatment for a "certified copy of a custody decree of another state").

¶ 13. Thus, the question before us is not whether the appealed order violates the terms of the original Minnesota divorce judgment, but whether the trial court erred in modifying those terms. In Wisconsin terminology, the parties' divorce judgment provided that Spencer's primary "physical placement" was with Linda, which means that she "has the right to have [Spencer] physically placed with [her] and has the right and responsibility to make, during that placement, routine daily decisions regarding [Spencer's] care, consistent with major decisions made by a person having legal custody." WIS. STAT. § 767.001(5). Prior to the instant order, the parties had "joint legal custody," which means that they shared legal custody and "neither party's legal custody rights are superior, except

482

with respect to specified decisions as set forth by the court or the parties in the final judgment or order." Section 767.001(1s).

¶ 14. Richard's motion did not seek a change in Spencer's primary placement from Linda to him, as did his earlier modification motion filed in 2001.[2] Rather, Richard sought only an order "allowing him to enroll" Spencer at St. John's Academy, an action that Linda opposed. The trial court granted Richard's motion and modified the parties' judgment by allocating to Richard the sole decision-making authority regarding Spencer's school enrollment. A circuit court is specifically empowered under WIS. STAT. § 767.24(6)(b) to make such an allocation between joint legal custodians: "the court may give one party sole power to make specified decisions, while both parties retain equal rights and responsibilities for other decisions."

¶ 15. Thus, the appealed order does not expressly modify the divorce judgment's directive that Spencer's primary physical placement be with Linda. We, of course, recognize that Spencer's change in school enrollment to a residential academy greatly impacts the amount of time that he will actually spend in Linda's home. We do not, however, accept Linda's implicit argument that a court may never allocate sole educational decision-making authority to a parent other than the one having primary physical placement. Here, the precise nature and location of the school in which Richard intended to enroll Spencer if his motion was granted was well known to the parties, the guardian ad

---

[2] Richard's current motion also asked for authority to enroll Adam at St. John's. As we have described, the guardian ad litem recommended that Adam remain enrolled at Logan Senior High School in La Crosse, and the trial court so ordered. Richard has not cross-appealed the order as it pertains to Adam.

litem and the court. All were thus aware that if Richard were given the sole right to determine Spencer's school enrollment, Spencer would be enrolled in a residential academy situated some three hours by car from Linda's home in La Crosse.

¶ 16. We are satisfied that, to the extent the appealed order results in a reduction in the amount of time Spencer will spend in Linda's home, the trial court was aware of that result when it evaluated whether Richard's requested modification to the existing joint custody order would be in Spencer's best interest. We conclude that, because WIS. STAT. § 767.325(1) permits a court to modify both the legal custody and physical placement provisions of a divorce judgment, the court may modify the terms of the parties' joint legal custody in a manner that results in a change in the amount of time the child spends in the home of the parent having primary physical placement.[3]

---

[3] We emphasize that the record before us shows that the trial court was well aware of the school placement Richard intended for Spencer and its impact on the amount of time Spencer would thereafter spend in Linda's home. We do not intend to suggest that a parent possessing the sole right to determine a child's school enrollment is necessarily free to exercise that right in an unanticipated way that significantly undermines the other parent's allocated placement time.

We note that, in response to a question from her attorney, Linda testified that she was concerned that Richard "could decide that Spencer should go to school in Chicago or move with him to Seattle when he moves to Seattle." These possibilities do not appear to have been within the court's contemplation when it entered the appealed order, and should either occur and a proper showing be made under WIS. STAT. § 767.325(1)(a) or (b), the trial court may consider whether further modifications to Spencer's custody or placement would be in his best interest.

¶ 17. As we have noted, the trial court did not modify the divorce judgment's provision that Spencer's primary placement be with Linda.[4] Thus, at any times that Spencer is not required to be at St. John's Academy, his primary placement continues with Linda, subject to Richard's right to "reasonable and liberal" periods of physical placement. If the parties are unable to agree on a placement schedule that takes into account Spencer's enrollment at St. John's, either may request the court to establish a set schedule. *See, e.g.,* WIS. STAT. § 767.325(3).

¶ 18. Having concluded that nothing in the parties' divorce judgment precludes the trial court from entering the order it did, and that WIS. STAT. §§ 767.24(6)(b) and 767.325(1) specifically authorize a court to modify a joint legal custody order in the

---

On the record before us, Spencer was enrolled and attending St. John's Academy. Our disposition is based, as it must be, on the record as it stands in this appeal, not on what the parties or Spencer might do thereafter.

[4] Linda testified that, at the conclusion of the hearing before the court commissioner, "everyone agreed that . . . the placement would stay with the mother." During her testimony, Linda also asked the trial court to include a statement to that effect in its order. Following the trial court's oral ruling at the conclusion of the de novo hearing, Linda's counsel renewed the request that the court's order reflect that "permanent physical placement also remain with" Linda. The court commented that it believed "that was part of the original order," and Richard's counsel responded that "[n]othing changed [in] the judgment other than the school decision." The appealed order, as well as the commissioner's order that the court "affirmed" and "adopted," are silent on the topic of physical placement. Given the foregoing statements by the parties and the court, however, we conclude that there is no dispute that Spencer's primary placement remains with Linda.

485

manner the trial court did here, we next consider whether the court erroneously exercised its discretion in granting Richard sole authority to decide Spencer's school enrollment. We first address Linda's claim that the trial court erred by failing to refer the parties to mediation, which she claims was a fatal omission that nullifies the court's subsequent order.

¶ 19. Linda is correct that, under WIS. STAT. § 767.11(5), when a party seeks revisions to a divorce judgment that affect the legal custody or physical placement of a child, "the court or circuit court commissioner *shall* refer the parties to the director of family court counseling services for possible mediation of those contested issues" (emphasis added). Moreover, the parties are required to "attend at least one session with a mediator," before a court "may hold a trial . . . or a final hearing on legal custody or physical placement." Section 767.11(8)(a). Linda also correctly points out that this was not done in this case. Richard, however, argues that Linda has waived the issue because she first raises it on appeal. We agree.

¶ 20. Linda had ample opportunity to cite the mediation requirement and demand a referral for mediation, either during the proceedings before the court commissioner or in her request for a hearing de novo, or even at some point during the three days of hearings that followed in the circuit court. She did not do so. We agree with the trial court's observation when denying Linda's request for a stay pending appeal that "as to the mediation issue, it's a little late to bring it up now after we've litigated the case and it's already on the way to the Court of Appeals. The issue wasn't raised at the time of the original hearing, it's been waived . . . ."

¶ 21. Except in rare circumstances that are not present here, we will not address an issue that an appellant raises for the first time on appeal, because doing so undermines judicial economy and creates an incentive for parties to build in error in order to have an adverse outcome in the trial court overturned on appeal. *See State v. Huebner*, 2000 WI 59, ¶ 12, 235 Wis. 2d 486, 611 N.W.2d 727. Had Linda raised the mediation requirement in the trial court, the court could easily have suspended further proceedings on Richard's motion in order to permit a referral for mediation. Despite her failure to raise the issue in the trial court, she would have us set aside the appealed order after the trial court devoted three days to hearing testimony on Richard's motion and after we have completed a review of the record and the parties' briefs on appeal. This case aptly demonstrates why we will generally invoke the waiver rule in order to prevent the waste of judicial resources in both the circuit court and this one. Linda has waived the right to raise the mandatory mediation issue on appeal, and we do not address it further.

¶ 22. We next examine the requirements of WIS. STAT. § 767.325(1)(b)1., which creates a two-step process for a court to follow in determining whether to substantially modify the terms of a custody or placement order entered at least two years earlier. First, as a threshold matter, whenever a requested modification "would substantially alter the time a parent may spend with his or her child," the moving party must show that there has been "a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement." Section 767.325(1)(b)1.b. If that showing is made, the court then proceeds to consider whether any

modification would be "in the best interest of the child." Section 767.325(1)(b)1.a.; *see Licary v. Licary*, 168 Wis. 2d 686, 694, 484 N.W.2d 371 (Ct. App. 1992) (explaining that before modifying a custody order, a court must find "that two conditions exist," but where no substantial change of circumstances is shown, the question of the child's best interests need not be reached). Finally, when considering the best interest of the child, the court must presume that continuing "the current allocation of decision making under a legal custody order" and continuing "the child's physical placement with the parent with whom the child resides for the greater period of time" are both in the best interest of the child. Section 767.325(1)(b)2. Both presumptions are rebuttable, however. *Id.*

¶ 23. Whether a party seeking to modify an existing custody order has established a "substantial change in circumstances," as required under Wis. Stat. § 767.325(1)(b)1.b., is a question of law that we decide de novo. *Harris v. Harris*, 141 Wis. 2d 569, 574–75, 415 N.W.2d 586 (Ct. App. 1987). When doing so, however, we must "give weight to a trial court's decision" because the determination is "heavily dependent upon an interpretation and analysis of underlying facts." *Id.* Linda argues that the trial court erred by not expressly determining whether Richard had shown a substantial change of circumstances, or alternatively, in implicitly concluding that a substantial change of circumstances had occurred. We agree with Richard, however, that the trial court implicitly concluded that circumstances had changed since the time of the parties' original divorce judgment awarding them joint legal custody, and that the court did not err in so concluding on the present record.

¶ 24. The trial court found that Spencer and his brother were "in pretty deep trouble" at the time Richard filed his motion because both had had "some contact with the criminal justice system." The court noted that the present circumstances had "developed over many, many years." At the time of the original divorce judgment, Spencer was not yet two years old. At the time of the modification hearing, he was fifteen, failing in school and using marijuana, and he had engaged in other illegal or inappropriate behavior. Because of the behavioral and adjustment problems exhibited by both boys, Richard had moved two years earlier for an order transferring their primary physical placement to him. The parties resolved the issue by agreeing to "work together to solve the issues of concern relating to their two sons," but by the summer of 2003, they were in disagreement over where their sons should go to school. Finally, Spencer had spent part of the summer attending a "leadership" camp at St. John's. He had apparently enjoyed the experience and, at least initially, voiced a desire to continue there during the academic year.

¶ 25. We conclude that the circumstances present in the summer of 2003 were substantially different than those existing at the time of the parties' divorce in 1990. At the time of the parties' divorce, no developmental or behavioral issues had surfaced regarding either Spencer or his brother, school enrollment was not an issue and there was presumably no indication that the parties would not be able to agree on major decisions affecting their children's lives. We recognize that the simple fact that a child grows older does not, in and of itself, create a substantial change in circumstances. *See Lofthus v. Lofthus*, 2004 WI App 65, ¶ 22,

489

270 Wis. 2d 515, 678 N.W.2d 393. However, when the age change is that from infant to adolescent; it is accompanied by a pattern of adjustment difficulties, educational failure and harmful or illegal behavior on the part of a child; and the parties are unable to agree on a major decision affecting the child's life, we are satisfied that a substantial change in circumstances has been shown.

¶ 26. The trial court thus properly proceeded to consider whether granting Richard sole authority to decide Spencer's school enrollment would be in Spencer's best interest. As to that determination, Linda asserts a "complete absence of any evidence expert or otherwise" to support the trial court's decision. Again we disagree.

¶ 27. A trial court's consideration and weighing of factors to determine what course of action is in a child's best interests is an exercise of discretion, and we may not substitute our own judgment for the trial court's properly exercised discretion. *See Long v. Ardestani,* 2001 WI App 46, ¶ 48, 241 Wis. 2d 498, 624 N.W.2d 405; *Zirngibl v. Zirngibl,* 165 Wis. 2d 130, 135, 477 N.W.2d 637 (Ct. App. 1991).

¶ 28. That Spencer's school performance had declined markedly; that he had been using marijuana for some time; that he had committed at least one theft; that his pattern of behavior emulated his older brother's; and that the parties could not agree on Spencer's school enrollment are all facts finding support in the record. From these facts, the trial court could reasonably infer, as it did, that unless something changed in his life, Spencer would continue to be in "deep trouble." The court could also reasonably con-

clude, as it did, that a change in Spencer's school and peer group would be in his best interest because it would allow him a fresh start and the opportunity to get his life on a positive track, whereas maintaining the status quo would likely lead to Spencer's following his brother on a downward path. Finally, there is nothing in the record to dispute the trial court's finding that St. John's Academy, Richard's intended place of enrollment for Spencer, is anything other than "a wonderful school" with "an excellent reputation, fine educational system, [that] will hopefully allow [Spencer] to some day get into a college of his choice."

¶ 29. Thus, not only is there sufficient evidence in the record to allow the trial court to conclude that the continuity presumptions of WIS. STAT. § 767.325(1)(b)2. had been overcome, but the court's ruling also demonstrates that the court considered several relevant "best interest" factors set forth in WIS. STAT. § 767.24(5), as it was required to do under § 767.325(5m). Specifically, the court's comments reflect that it considered Spencer's wishes and those of his parents; his adjustment to home, school and community; his age and educational and developmental needs; the cooperation and communication between the parties; and the input of appropriate professionals. *See* § 767.24(5)(a), (b), (d), (dm), (fm), and (jm).

¶ 30. We therefore conclude that the trial court applied the correct law and based its decision on what it deemed to be in Spencer's best interest.[5] Moreover, the

---

[5] In her reply brief, Linda argues, among other things, that the trial court's decision to grant Richard sole decision-making authority over Spencer's school enrollment is "unreasonable and plainly unfair to Linda and [her husband] who have invested the last 14 years of their lives raising Spencer." This argument, of course, misses the point—the standard for the

court considered the relevant facts of record and reasoned its way to a conclusion that a reasonable judge could reach, a conclusion that we must therefore affirm as a proper exercise of discretion. *See Keller v. Keller,* 2002 WI App 161, ¶ 6, 256 Wis. 2d 401, 647 N.W.2d 426. Finally, the court's disposition was also in accord with the guardian ad litem's recommendation as to Spencer's best interest, and it was not contrary to the "expert testimony," as Linda maintains.

¶ 31. As for the testimony that Linda cites as contradicting the trial court's conclusion that sending Spencer to St. John's was in his best interest, we are not persuaded that the testimony supports only a conclusion that sending Spencer to St. John's would be contrary to his best interest. The three witnesses (a psychologist, a drug abuse counselor and a high school principal) were all invested to some degree in assisting Linda in her efforts to enable Spencer to overcome his behavioral problems while continuing to attend high school in La Crosse. Understandably, each testified to a belief that these efforts could be successful and should be attempted before transferring Spencer to a residential school setting.

¶ 32. Although the psychologist, counselor and principal thus provided support for Linda's position that Spencer could be successful if he remained in La Crosse for high school, none testified that having Spencer attend St. John's for his sophomore year would be contrary to his best interest. The psychologist acknowledged that his recommendation in favor of having

court's decision was Spencer's best interest, not fairness to the parties. The trial court recognized that Linda would not be happy with its decision and that this was "understandable," but it urged her to support the change as being "what's best for [Spencer]."

Spencer remain at Logan was a "generic recommendation I would give to any child who is having academic problems" because of the preference for moving "in the direction of less restrictive to more restrictive placements." He also testified that, in determining the school "that Spencer is most likely to succeed in," it was appropriate for the court to consider "where he will receive the most motivation, the most structure, the most after-school support, and the most tutoring." The trial court could reasonably find on the present record that St. John's would be better able to meet these criteria than would his former school setting in La Crosse.

¶ 33. Similarly, Spencer's drug abuse counselor testified that Spencer was "a kid that can adapt" and that "change might be a good thing" for him, although how the change was accomplished would be "the important thing." The counselor also acknowledged that he had told Spencer's guardian ad litem on several occasions that he had no "recommendation as to where it is best for [Spencer and Adam] to go to school," and he also testified that "I don't know if it would be a bad thing for [Spencer] to go to the military school." Finally, the principal of Logan High School testified that Spencer would have to repeat several classes but could still graduate with his class, although he "could not afford another year like the freshman year." Unlike the other two witnesses, the principal was not specifically asked to offer an opinion as to whether continuing at Logan or transferring to St. John's would be better for Spencer.

¶ 34. In short, nothing that any of the three non-party witnesses said at the hearing indicated that Spencer's transfer to St. John's would be contrary to his best interest, and each gave at least some testimony that supports the trial court's conclusion that the

transfer would foster Spencer's best interest. The trial court specifically credited the testimony of all three, noting in its ruling that these witnesses were "intelligent and dedicated people" who were dedicated to "helping kids." We are thus satisfied by the record that the trial court considered the testimony of the three non-party witnesses and that the court's conclusion is not undermined by their testimony.

## CONCLUSION

¶ 35. For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.