MICHAEL J. GABLEMAN, J.
¶ 65. (dissenting). Today the court undermines contract rights in the name of good faith and fair dealing, overturns thirty years of precedent, and inverts the employer-employee relationship. I respectfully dissent.
I. BEIDEL FORFEITED HIS ARGUMENT CONCERNING THE COVENANT OF GOOD FAITH AND FAIR DEALING
¶ 66. Before discussing the majority's legal conclusions, it is important to first note that Beidel for *400 feited[1] his argument that Sideline violated the covenant of good faith and fair dealing. Beidel never pled a claim related to the covenant of good faith and fair dealing, nor did he raise the issue before the court of appeals. The court of appeals, however, assisted Beidel by plucking the remedy out of thin air and making it the basis for its decision to remand to the circuit court to determine "where the bulk of the equities lie." Beidel v. Sideline Software, Inc., 2012 WI App 36, ¶ 16, 340 Wis. 2d 433, 811 N.W.2d 856.
¶ 67. So how does the majority get around the forfeiture obstacle? By stating that "[i]t would be absurd to remand for the balancing of the equities where a party seeks specific performance and to do so on the condition that the circuit court ignore breaches of good faith and fair dealing by the parties." Majority op., ¶ 48. But this puts the cart before the horse. Given that the majority is holding that the constructive discharge doctrine does not apply, and that constructive discharge was the entire justification for Beidel's specific performance claim, it is unclear why this court is not dismissing Beidel's complaint and is instead ordering the circuit court to consider a claim that was never pled.[2]
*401 ¶ 68. While I acknowledge that appellate courts have the inherent authority to consider issues raised for the first time on appeal, State v. Huebner, 2000 WI 59, ¶¶ 27-28, 235 Wis. 2d 486, 611 N.W.2d 727, this discretionary power should be used sparingly. Green v. Hahn, 2004 WI App 214, ¶ 21, 277 Wis. 2d 473, 689 N.W.2d *402 657. Moreover, our forfeiture doctrine permits us to consider issues or arguments not raised; it does not extend to causes of action that were never pled. Sohns v. Jensen, 11 Wis. 2d 449, 458, 105 N.W.2d 818 (1960) ("Where an issue is neither pleaded nor litigated in the trial court, this court ordinarily will not consider it on appeal. . . ."); Murphy v. Martin, 58 Wis. 276, 280, 16 N.W. 603 (1883) (noting that it is not the "province of this court" to "form new issues"). As we recently stated, "The mutual consolation of forfeiture is that each party can be confident that a right forfeited by the other will not be relitigated in some subsequent appeal or proceeding." State v. Soto, 2012 WI 93, ¶ 36, 343 Wis. 2d 43, 817 N.W.2d 848. Or as Justice Scalia has put it, the purpose of applying the forfeiture rule is to ensure that the trial remains "the main event," and not simply a "tryout on the road to appellate review." Freytag v. Comm'r of Internal Revenue, 501 U.S. 868, 895 (1991) (Scalia, J., concurring). The court today provides no justification for ignoring the forfeiture rule and giving Beidel — a sophisticated party who has been ably represented throughout this litigation — a shot at a second trial. In this respect the majority — much like the court of appeals before it — serves as advocate rather than adjudicator.
II. THE COVENANT CANNOT OVERRIDE EXPRESS TERMS OF A CONTRACT
¶ 69. The most important fact in this case is that Sideline acted completely in accordance with its contractual rights. While it is true that the covenant of good faith and fair dealing inheres in every contract, this equitable doctrine cannot, contra the majority, be used to vitiate clear contractual language. Instead, the notion of good faith is meant to serve as a gap-filler where *403 a contract is silent. United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir. 2001). It may not "block use of terms that actually appear in the contract," and it has "nothing to do with the enforcement of terms actually negotiated." Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir. 1992) (Easterbrook, J.) (citation omitted). Indeed, in a recent decision the United States Supreme Court unanimously held that equitable remedies cannot trump the plain terms of a contract and may be used only to fill contractual gaps. US Airways, Inc. v. McCutchen, 569 U.S._, 133 S. Ct. 1537, 1546-47, 1549-50 (2013). Here, there are simply no gaps to be filled.
¶ 70. The majority seems to recognize these principles when it states that "[a] party may not, however, employ the good faith and fair dealing covenant to undo express terms of an agreement." Majority op., ¶ 29. In fact, the majority quotes (but then ignores) the following language from a court of appeals opinion:
[When] a contracting party complains of acts of the other party which are specifically authorized in their agreement, we do not see how there can be any breach of the covenant of good faith. Indeed, it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a "bad faith" breach of that contract.
Super Valu Stores, Inc. v. D-Mart Food Stores, Inc., 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988). The majority's knowing disregard of such a fundamental principle of contract law is inexplicable. It appears that the majority either thinks that the concept of good faith and fair dealing is much broader than it is, or perhaps it wants to expand the doctrine with this case. In any *404 event, the doctrine of good faith and fair dealing is plainly inapplicable when a scenario is covered by the terms of a contract.
¶ 71. Two of the leading lights of the law and economics movement, Judges Frank Easterbrook and Richard Posner of the United States Court of Appeals for the Seventh Circuit, have sharply criticized the idea — advanced by the majority — that a party's bargained for contractual rights can be superseded by the ethereal good faith requirement. As Judge Easterbrook has said, "Parties to a contract are not each others' fiduciaries; they are not bound to treat customers with the same consideration reserved for their families." Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir. 1990). An individual is "entitled to enforce [a contract] to the letter," even if this causes "great discomfort" to the other party. Id. The essence of an at-will contract is that an "employer may sack its employee for any reason except one forbidden by law, and it need not show 'good cause.'" Id. at 1358.
¶ 72. In a similar vein, Judge Posner — in a decision interpreting Wisconsin law — wrote that "it is unlikely that Wisconsin wishes, in the name of good faith, to make every contract signatory his brother's keeper. ... In fact the law contemplates that people frequently will take advantage of the ignorance of those with whom they contract, without thereby incurring liability." Market Street Assocs. v. Frey, 941 F.2d 588, 593-94 (7th Cir. 1991). What is more, "even after you have signed a contract, you are not obliged to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain." Id. at 594. Judge Posner warned that "[i]t would be quixotic as well as presumptuous for judges to under *405 take through contract law to raise the ethical standards of the nation's business people." Id. at 595. Living in a free enterprise society means that we must accept that some contracts may "place one party at the other's mercy." Id.
¶ 73. When Beidel and Hall entered into the stock repurchase agreement, both knew (or should have known) that the put option would be subject to the whims of the marketplace. For some reason, the majority has decided to immunize Beidel and punish Hall for the bargain that each struck. In doing so, this court has just loosed a great deal of uncertainty upon contract law in the State of Wisconsin, and in the process inverted the employer-employee relationship by ceding some of a company's termination authority to its workers. At the very least, an at-will employee can now raise a colorable claim on the meager basis that he was terminated at a time inconvenient for him and his stock options. This court would do well to heed the words of Judge Learned Hand: "[I]n commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves." James Baird Co. v. Gimbel Bros., Inc., 64 F.2d 344, 346 (2d Cir. 1933).
III. THE MAJORITY OVERTURNS A THIRTY-YEAR-OLD DECISION OF THIS COURT
¶ 74. In deciding that Beidel can present a factual argument that the timing of his firing was in bad faith, this decision overturns, sub silentio, Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 335 N.W.2d 834 (1983), a case not even mentioned by the majority. There, Brockmeyer was fired for smoking marijuana in front of his employees, poor job performance, and having an affair with his secretary. Id. at 565. Despite having no em *406 ployment contract, Brockmeyer filed a wrongful discharge action. Id. at 564-65. The issue in the case was whether an at-will employee could bring a wrongful discharge action. See id. at 563.
¶ 75. We began by recognizing the American common law rule, which was that an employer may discharge an at-will employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." Id. at 567 (citations omitted). We then noted that federal and state statutes have since modified the concept of an at-will employee such that certain protected classes cannot be fired for discriminatory reasons. Id. at 567-68. Consistent with these statutory trends, state courts across the country developed two common law causes of action for terminated at-will employees. Id. at 568. One is the "public policy exception," which allows a discharged employee to recover if "the termination violates a well-established and important public policy." Id. at 569. The other cause of action is broader, and provides that an employer has an implied duty to terminate an employee only in good faith. Id. A discharge in bad faith would thus constitute a breach of contract. Id.
¶ 76. This court adopted the public policy exception while expressly rejecting the bad faith termination cause of action. As we stated, "We refuse to impose a duty to terminate in good faith into employment contracts. To do so would 'subject each discharge to judicial incursions into the amorphous concept of bad faith.'. . . Imposing a good faith duty to terminate would unduly restrict an employer's discretion in managing the workforce." Id. (citation omitted). That has been the law for thirty years. With today's decision that Sideline is not entitled to summary judgment for exercising a clear contractual right because the timing of Beidel's termi *407 nation may have been in bad faith, the majority overrules Brockmeyer and erodes at-will employment contracts.
IV THE RECORD DOES NOT SUPPORT A FINDING OF BAD FAITH
¶ 77. Finally, if this court is going to adopt the bad faith termination cause of action, it is worth pausing to consider whether Sideline actually acted in bad faith towards Beidel. Our decision remands this case to the circuit court to determine which party has a stronger equitable claim. As I have made clear throughout this dissent, I am unsure when it would ever be inequitable for a party to exercise a valid contractual right, so I do not know how the circuit court is supposed to proceed under the standard crafted by today's opinion. But be that as it may, I can see nothing that could plausibly be characterized as bad faith conduct on the part of Sideline.
¶ 78. In October 2008, Hall informed Beidel that he planned to fire him the following March, after Sideline's stock could be revalued from its overinflated price of $1,600 a share. In doing so, Hall acted not only in his best interests, but in the best interests of the company as well. Additionally, by providing notice to Beidel when he did, Hall gave him five months to prepare for the inevitable. And during the period leading up to his termination, Beidel continued to receive compensation from Sideline — to the tune of $269,000 in salary and shareholder distributions in 2008.
¶ 79. The only options Sideline had, besides the one it took, were: (1) act contrary to its own interests and terminate Beidel when the stock was overvalued; or (2) keep mum about Beidel's impending termination *408 and instead spring the news on him the day after Sideline's stock was revalued. The first choice is irrational and the second would seemingly fail the equitable test laid down by the majority, but if Sideline is not able to rely on the language of the contract, those were its only alternatives. The court is remanding this case for the circuit court to determine "whether the equities lie on the plaintiffs or defendant's side," majority op., ¶ 1, but I think today's decision has already stacked the deck against Sideline.
¶ 80. For the foregoing reasons, I respectfully dissent.

 The majority refers to Beidel "waiving" his argument but "forfeiture" is the more accurate term. See State v. Ndina, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (citation omitted).

 The concurrence considers a remand appropriate for further fact-finding on whether Beidel was actually terminated during the relevant time period. Concurrence, ¶ 59 n.2.1 read the record differently. In my view, Beidel conceded that he was not actually terminated within the relevant period and a hearing on the issue is therefore unnecessary.
*401 At a telephonic conference regarding Beidel's motion for reconsideration, Sideline's attorney stated: "I think we've had a concession by [Beidel] that there was no actual termination of him by Sideline .... [B]ecause of that prior concession by [Beidel], I would like to prepare the order [dismissing Beidel's motion for reconsideration]." Beidel's attorney then asked Sideline's attorney to "send it to me before you send it in. We'll make sure it's in the right form before we even get it to the judge." The following month the circuit court signed the order denying Beidel's motion for reconsideration. The order contained the following language: "Further, based on an agreement of the parties placed on the record on January 27, 2011, that Plaintiff [Beidel] does not contend he was actually terminated by Sideline prior to March 7, 2009, this Order resolves all claims as to Sideline's alleged liability to Plaintiff." No party ever objected to this language, and no party objects to it now.
I regard the exchange between the attorneys quoted above as an oral stipulation, subsequently memorialized in the court's order, and binding on the litigants. See, e.g., Wyandotte Chemicals Corp. v. Royal Elec. Mfg. Co., Inc., 66 Wis. 2d 577, 589, 225 N.W.2d 648 (1975) ("Generally then, oral stipulations made in open court, taken down by the reporter, and acted upon by the parties and the court are valid and binding.") (citation omitted). In my opinion, the doctrine of claim preclusion would thus bar Beidel from making an argument that he was actually terminated under the hearing envisioned by the concurrence. See N. States Power Co. v. Bugher, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995) (describing the elements of claim preclusion as: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction.").