COURT OF APPEALS
DECISION
DATED AND FILED

September 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1816**

STATE OF WISCONSIN

Cir. Ct. No. 2017FA8

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

MARK JASON ANDERSON,

PETITIONER-RESPONDENT,

V.

ERICA JEAN LINDQUIST A/K/A ERICA JEAN ANDERSON,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Erica Lindquist appeals an order granting Mark Anderson's motion to modify physical placement of the parties' minor children. Lindquist argues the circuit court erred by determining that the last order substantially affecting physical placement was the parties' July 2017 divorce judgment, rather than a subsequent order entered in August 2018 that permitted Lindquist to move to Minnesota and exercise physical placement there. In the alternative, Lindquist argues that even if the July 2017 divorce judgment was the last order substantially affecting physical placement, Anderson failed to establish that a substantial change in circumstances had occurred since that time. Finally, Lindquist argues that the court erroneously exercised its discretion by determining that Anderson's proposed modification of physical placement would be in the children's best interest. We reject each of these arguments and affirm.

## BACKGROUND

¶2 Lindquist and Anderson were married in October 1998, and Anderson petitioned for divorce in January 2017. A judgment of divorce was entered in July 2017, at which time the parties' two minor children were ages five and six, respectively.

¶3 The divorce judgment incorporated a marital settlement agreement (MSA), which provided that the parties would have joint legal custody of the children and would exercise physical placement "as set forth in the attached Exhibit A." Exhibit A, a calendar for the year 2017, reflected that the parties would have equal physical placement of the children during the summer, but during the school year Lindquist would have physical placement approximately two-thirds of the time. The parties' respective periods of physical placement during the school year did not always follow a predictable pattern but were instead

2

structured to accommodate Lindquist's need to travel for work. The MSA stated that after 2017, "the schedule of time between the parents shall remain the same; however, the specific schedule for the following year will be agreed upon between the parties by November of the current year, or as soon thereafter as possible."

¶4      At the time of the divorce, both parties lived in Menomonie, Wisconsin. However, in May 2018, Lindquist filed a notice of her intent to move to Baytown Township, Minnesota, which is approximately fifty-five miles from Menomonie. Anderson initially objected to the move, but the parties ultimately entered into a stipulation regarding the move and several related issues.

¶5      As relevant here, the stipulation provided that: (1) Lindquist could move to Baytown Township and exercise her physical placement of the parties' children at her residence there; (2) unless agreed to by the parties or ordered by the circuit court, the children would attend school in the Menomonie School District; (3) each party would be responsible for ensuring that the children arrived at school on time on their respective placement days; (4) both parties would adhere to school district attendance policies and would notify the other parent of any absences from school; (5) during the winter months, the parties would monitor and communicate about forecasted inclement weather insofar as it affected their ability to transport the children; and (6) the parties would confer and agree on the children's participation in school-sanctioned extracurricular activities if those activities affected the other parent's placement, and each party would be allowed to enroll the children in activities that did not affect the other parent's placement. The court entered an order approving the parties' stipulation in August 2018.

¶6      In February 2020, Anderson filed a motion to modify physical placement. As grounds for the motion, Anderson alleged that the parties had been

unable to cooperate to develop a yearly placement schedule, as required by the MSA. Anderson further alleged that the parties' circumstances had changed since they entered into the MSA because: (1) Lindquist had changed jobs and was no longer required to travel frequently for work; (2) Lindquist had stopped allowing Anderson to exercise additional placement time with the children while she was traveling; (3) the children were older than at the time the divorce judgment was entered; and (4) Lindquist had moved to Minnesota, which required the children to travel for significant amounts of time on Lindquist's placement days to attend school in Menomonie. Under these circumstances, Anderson contended it would be in the children's best interest to "implement a more traditional and consistent shared placement schedule." Anderson therefore asked the circuit court to modify physical placement to provide for equal placement during the school year, according to a "week-on, week-off placement schedule."

¶7     The circuit court held a hearing on Anderson's motion to modify physical placement, at which both Anderson and Lindquist testified. Following their testimony, the children's guardian ad litem recommended that the court grant Anderson's motion and implement an equal placement schedule during the school year.

¶8     The circuit court ultimately granted Anderson's motion to modify physical placement in an oral ruling. First, the court concluded that the last order substantially affecting physical placement was the July 2017 divorce judgment, which incorporated the parties' MSA. Second, the court concluded that there had been a substantial change in circumstances since the entry of the divorce judgment because Lindquist was no longer required to travel frequently for work, and because she had moved to a different community that was approximately fifty-five miles away from the children's school. Third, after considering the factors set

4

forth in WIS. STAT. § 767.41(5)(am) (2019-20),[1] the court determined that it would be in the children's best interest to adopt an equal placement schedule during the school year, with Anderson and Lindquist having alternating weeks of placement. The court subsequently entered a written order memorializing its oral ruling, and Lindquist now appeals. Additional facts are included below as necessary.

## DISCUSSION

¶9 Motions to modify physical placement are governed by WIS. STAT. § 767.451. If more than two years have elapsed since the entry of a final judgment determining physical placement, a court may modify physical placement in a way that substantially alters the time a parent may spend with his or her child if the court finds that: (1) there has been a substantial change in circumstances since the entry of the last order substantially affecting physical placement; and (2) the modification is in the child's best interest. Sec. 767.451(1)(b)1. There is a rebuttable presumption that it is in a child's best interest to continue his or her physical placement with the parent with whom the child resides for the greater period of time. Sec. 767.451(1)(b)2.b.

¶10 In this appeal, Lindquist argues the circuit court erred by concluding that: (1) the July 2017 divorce judgment was the last order substantially affecting physical placement; (2) a substantial change in circumstances had occurred since the divorce judgment was entered; and (3) Anderson's requested modification of physical placement was in the children's best interest.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## I. Last order substantially affecting physical placement

¶11 Physical placement determinations are committed to the circuit court's sound discretion and will be sustained on appeal if the court exercised its discretion based on the law and the facts of record and employed a logical rationale in arriving at its decision. *Culligan v. Cindric*, 2003 WI App 180, ¶7, 266 Wis. 2d 534, 669 N.W.2d 175. We independently review any legal questions underlying a circuit court's discretionary decision. *Covelli v. Covelli*, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260. The determination of which prior order constitutes the last order substantially affecting physical placement for purposes of WIS. STAT. § 767.451(1)(b) is a question of law for our independent review. *See Culligan*, 266 Wis. 2d 534, ¶¶8-15.[2]

¶12 Lindquist contends the circuit court erred by determining that the July 2017 divorce judgment was the last order substantially affecting physical placement, rather than the August 2018 order, following the parties' stipulation, that permitted Lindquist to move to Minnesota. She argues the August 2018 order substantially affected physical placement because it allowed her to exercise her physical placement of the children at her new residence in Minnesota. She also asserts that the August 2018 order substantially affected physical placement because it "specifically addressed where the children would attend school, [and] addressed school transportation needs and the children's participation in school-sanctioned extracurricular activities."

---

[2] *Culligan v. Cindric*, 2003 WI App 180, ¶1 & n.1, 266 Wis. 2d 534, 669 N.W.2d 175, interpreted and applied WIS. STAT. § 767.325(1)(b) (2001-02). That statute was later renumbered as WIS. STAT. § 767.451(1)(b). *See* 2005 Wis. Act 443, § 160.

¶13 Lindquist's arguments are foreclosed by our decision in **Culligan**. There, we concluded that the ordinary meaning of the term "affect" is "to act upon" or "to produce an effect upon." **Id.**, ¶14 (citation omitted). We therefore held that an order affects physical placement when it "produces an effect on the periods of physical placement awarded the parties, which effect a court may enforce at a later date." **Id.** We further stated that, "[i]n practical terms, a revision of a placement order produces an effect on physical placement *by requiring a different placement allocation*." **Id.** (emphasis added).

¶14 The circuit court's August 2018 order did not require a different placement allocation between the parties. Nothing in that order changed the amount of physical placement to which each party was entitled. Instead, the order merely allowed Lindquist to establish her residence in Minnesota and to exercise her periods of physical placement there. None of the order's other provisions had any effect on the allocation of physical placement between the parties. Thus, under **Culligan**, the August 2018 order did not affect—much less substantially affect—physical placement.

¶15 Lindquist argues that the August 2018 order must have affected physical placement because the circuit court later cited her move to Minnesota as one of the grounds for its determination that a substantial change in circumstances had occurred. This argument fails because whether an order affected physical placement for purposes of WIS. STAT. § 767.451(1)(b) is a separate inquiry from whether a particular set of facts constitutes a substantial change in circumstances. As already discussed, the former inquiry requires a determination of whether the order in question required a different placement allocation. *See Culligan*, 266 Wis. 2d 534, ¶14. Here, for the reasons explained above, we conclude the August 2018 order did not. Under the test set forth in **Culligan**, the fact that the

7

order allowed Lindquist to move to Minnesota and exercise physical placement there—which the court ultimately determined to be a substantial change in circumstances—does not compel a conclusion that the order affected physical placement.

¶16    In her reply brief, Lindquist appears to suggest that the August 2018 order affected physical placement because her move to Minnesota resulted in significant additional travel time for the children.  That additional travel time, however, did not affect the allocation of physical placement between the parties.  Lindquist had the same amount of physical placement both before and after the August 2018 order was entered.  Following the August 2018 order, she was simply required to spend an increased amount of her placement time transporting the children to and from school.  That result does not constitute an effect on physical placement under *Culligan*.

¶17    Lindquist also asserts in her reply brief that Anderson "admitted" during his testimony that the August 2018 order was the last order substantially affecting physical placement.  However, we are not bound by a party's concession of law.  *Cramer v. Eau Claire Cnty.*, 2013 WI App 67, ¶11, 348 Wis. 2d 154, 833 N.W.2d 172.  In any event, while Lindquist quotes a portion of Anderson's testimony on cross-examination during which he agreed that the August 2018 order permitting Lindquist to move to Minnesota was the "last substantial change of the placement schedule," Anderson later clarified on redirect examination that the August 2018 order did not actually change the placement schedule.  Thus, contrary to Lindquist's assertion, Anderson did not concede during his testimony that the August 2018 order was the last order substantially affecting physical placement.

## II. Substantial change in circumstances

¶18   Lindquist next argues that even if the circuit court properly determined that the July 2017 divorce judgment was the last order substantially affecting physical placement, the court erred by concluding that a substantial change in circumstances had occurred since that judgment was entered.  Whether a party seeking to modify physical placement has established a substantial change in circumstances is a question of law that we review independently.  ***Shulka v. Sikraji***, 2014 WI App 113, ¶25, 358 Wis. 2d 639, 856 N.W.2d 617.  In doing so, however, we give weight to the circuit court's decision "because the determination is heavily dependent upon an interpretation and analysis of underlying facts." ***Id.*** (citation omitted).  A substantial change in circumstances "requires that the facts on which the prior order was based differ from the present facts, and the difference is enough to justify the court's considering whether to modify the order." ***Id.***, ¶24 (citation omitted).

¶19   We agree with the circuit court that in this case, the facts changed between the entry of the divorce judgment in July 2017 and the filing of Anderson's motion to modify physical placement in February 2020, and the change was sufficient to justify the court's consideration of whether to modify physical placement.  First, it is undisputed that Lindquist changed jobs after the divorce judgment was entered, and that her new position required less travel.  The original physical placement schedule set forth in the MSA was designed to accommodate Lindquist's work-related travel and therefore resulted in an inconsistent placement schedule that did not always follow a set pattern.  Moreover, the MSA required the parties to confer and agree upon a new placement schedule every year.  The court could reasonably conclude that because Lindquist was no longer required to travel as frequently for work, the unorthodox physical

9

placement schedule that the parties originally agreed upon was no longer necessary, and a more regular schedule could be adopted that would provide greater consistency for the parties' children.

¶20 Second, Anderson testified that at the time the parties entered into the MSA, and during the year after the divorce, Lindquist allowed him to exercise additional physical placement of the children during times when she was traveling for work. As a result, Anderson testified that he actually had physical placement of the children close to fifty percent of the time during the year after the divorce. He further testified, however, that after Lindquist moved to Minnesota, she stopped offering to let him take the children while she traveled. Lindquist disputed Anderson's assertion that his placement during the school year was ever close to fifty percent. Nevertheless, she conceded that she had previously allowed Anderson to exercise additional placement during periods when she was traveling, and that Anderson had not received any such additional placement during 2019 and 2020. The fact that Anderson was receiving at least some additional placement time when the judgment of divorce was entered—beyond that allocated to him by the MSA—but was no longer receiving that additional time in 2020 further supports a conclusion that a substantial change in circumstances occurred.

¶21 Third, it is undisputed that Lindquist moved from Menomonie to Minnesota in 2018. Despite Lindquist's move, the parties agreed that the children would continue attending school in Menomonie, which is approximately fifty-five miles from Lindquist's current home. Thus, following Lindquist's move, for the two-thirds of the school year during which Lindquist had physical placement, the children were required to travel approximately 110 miles per day to and from school. The circuit court could reasonably conclude that this increased travel time

was a hardship for the children and therefore warranted revisiting the issue of physical placement.

¶22 Lindquist argues, for several reasons, that the facts discussed above are insufficient to constitute a substantial change in circumstances. For instance, she correctly notes that a change in "economic circumstances" does not qualify as a substantial change in circumstances for purposes of modifying physical placement. *See* WIS. STAT. § 767.451(1)(b)3. She therefore suggests that a "change in jobs" cannot constitute a substantial change in circumstances. However, neither the circuit court nor this court has concluded that Lindquist's change in jobs gave rise to a substantial change in circumstances because it altered Lindquist's economic circumstances. Instead, we have concluded that Lindquist's change in employment gave rise to a substantial change in circumstances because it affected the amount of time that Lindquist spent traveling for work, which in turn affected the parties' ability to implement a more consistent placement schedule. As such, our decision is not inconsistent with § 767.451(1)(b)3.

¶23 Lindquist also argues that her change in employment did not warrant a modification of physical placement that reduced her placement time because her decreased work travel has actually made her more available to care for the children, not less. In a similar vein, Lindquist argues that Anderson's work schedule has not changed since the time of divorce, in that he continues to work long hours on weekdays and is therefore less available to care for the children and help them with their school work. Lindquist emphasizes that during the COVID-19 pandemic, Anderson's work schedule made it impossible for him to help the children with their remote learning during his placement time, and that task instead fell to Anderson's girlfriend. Lindquist further asserts that the unequal allocation of school-year physical placement in the MSA was based on

Lindquist's "work flexibility, the need for a stable home environment during the school year and [Lindquist's] concern with academics." She contends that those circumstances have not changed since the parties signed the MSA.

¶24 The circumstances that Lindquist cites do not negate our conclusion that a substantial change in circumstances occurred for the reasons explained above. Again, the record shows that because Lindquist is now traveling less for work, the inconsistent and unorthodox physical placement schedule that the parties agreed to in the MSA is no longer necessary. The record also shows that Anderson is now receiving fewer additional placement days than he did at the time of the divorce. Finally, the record shows that Lindquist's move to Minnesota has resulted in increased travel time for the children during Lindquist's school-year placement. Taken together, these facts are sufficient to constitute a substantial change in circumstances. The fact that other circumstances have not changed—specifically, Anderson's work schedule and Lindquist's involvement in the children's academics—does not compel a conclusion that a substantial change in circumstances has not occurred. Furthermore, while Lindquist's increased availability to care for the children due to her change in employment was a factor that the circuit court could consider in determining whether a modification of physical placement was in the children's best interest, it does not affect whether the factors set forth above constitute a substantial change in circumstances.

¶25 Lindquist also contends the fact that she no longer gives Anderson the first opportunity to take the children when she is unavailable to exercise physical placement does not constitute a substantial change in circumstances because the MSA does not contain a right-of-first-refusal provision and Anderson never asked for the inclusion of such a provision. Lindquist also notes it is undisputed that Anderson has always received the amount of placement to which

he is entitled under the MSA. Be that as it may, Anderson expressly testified—and Lindquist does not dispute—that at the time the parties signed the MSA and during the year after the divorce judgment was entered, Anderson received at least some additional placement time with the children during times when Lindquist traveled for work. It is also undisputed that since Lindquist's move to Minnesota, Anderson no longer receives any additional placement time. Thus, regardless of whether Anderson was entitled to additional placement time under the MSA, the record shows that a change in circumstances has occurred with respect to his ability to exercise such additional placement.

¶26     Lindquist also argues that because Anderson stipulated that she could move to Minnesota and that the children would remain in school in Menomonie, he cannot now argue that her move constitutes a substantial change in circumstances warranting a modification of physical placement. We disagree. Lindquist does not cite any legal authority in support of the proposition that Anderson's stipulation to Lindquist's move now prevents him from arguing that the move, in conjunction with other factors, has given rise to a substantial change in circumstances. We need not address arguments that are unsupported by references to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶27     Lindquist further argues that although the parties stipulated in the MSA that "the parenting time schedule may change from year to year," they did not stipulate that the "amount of time each parent is allocated" would change as a result of that yearly review. This argument misses the mark. The circuit court did not modify physical placement based on the yearly-review provision in the MSA. Rather, the court determined that a modification of physical placement was warranted under WIS. STAT. § 767.451(1)(b)1. because a substantial change in

circumstances had occurred and modification was in the children's best interest. Nothing in the MSA prevented the court from modifying physical placement on the grounds set forth in the statute. As explained above, we conclude the court properly determined that a substantial change in circumstances had occurred, justifying the court's consideration of whether to modify physical placement.[3] *See Shulka*, 358 Wis. 2d 639, ¶24.

### III. Best interest of the children

¶28    Finally, Lindquist argues that even if the circuit court properly concluded that a substantial change in circumstances had occurred since the July 2017 divorce judgment, the court erroneously exercised its discretion by determining that Anderson's proposed modification of physical placement was in the children's best interest.[4] In particular, Lindquist argues the court failed to apply the rebuttable presumption in WIS. STAT. § 767.451(1)(b)2.b. that it would be in the children's best interest to continue their physical placement with the parent with whom they resided for the greater period of time—i.e., Lindquist.

---

[3] Anderson suggested in the circuit court that a substantial change in circumstances had occurred because the parties were unable to agree on a yearly placement schedule, as required by the MSA. On appeal, Lindquist cites a provision of the MSA stating that if the parties cannot resolve a dispute pertaining to physical placement, either party may request that the matter be referred to mediation. Lindquist then asserts that Anderson never requested mediation of any dispute as to the development of a yearly placement schedule. Anderson's failure to request mediation is irrelevant, however, as our decision that a substantial change in circumstances occurred is not based on the parties' inability to agree to a yearly placement schedule.

[4] Lindquist repeatedly uses the phrase "abuse of discretion." Our supreme court changed the terminology used in reviewing a circuit court's discretionary decisions from "abuse of discretion" to "erroneous exercise of discretion" in 1992. *See State v. Plymesser*, 172 Wis. 2d 583, 585 n.1, 493 N.W.2d 367 (1992).

¶29 This argument fails because the circuit court expressly referenced the statutory presumption during its oral ruling. Then, after considering the factors set forth in WIS. STAT. § 767.41(5)(am), the court nevertheless concluded that it would be in the children's best interest to modify physical placement. The court therefore implicitly determined that Anderson had overcome the statutory presumption, and its failure to expressly state the same does not require reversal. *See, e.g.*, ***State v. Gary M.B.***, 2004 WI 33, ¶26, 270 Wis. 2d 62, 676 N.W.2d 475 (recognizing that "magic words" are not required, and that we may affirm a circuit court's decision where the record indicates that the court implicitly made the required determination).

¶30 Moreover, the circuit court did not erroneously exercise its discretion by determining that Anderson had overcome the statutory presumption and that his requested modification of physical placement would be in the children's best interest. As required by WIS. STAT. § 767.451(5m)(a), the court considered each of the relevant factors in WIS. STAT. § 767.41(5)(am) when assessing the best interest of the children.[5] First, the court considered the wishes of the parents, *see* § 767.41(5)(am)1., noting that Anderson wanted increased time with the children and a more consistent placement schedule, whereas Lindquist "would like to keep the same amount of time that she has."

¶31 The circuit court next considered the wishes of the children, *see* WIS. STAT. § 767.41(5)(am)2., noting that both children had told the guardian ad litem

---

[5] The legislature amended WIS. STAT. § 767.41(5)(am) in May 2021, but the new version of the statute will not go into effect until December 1, 2021, and will first apply to physical placement orders issued on that date. *See* 2021 Wis. Act 37, §§2-4, 7-8. The amended version of the statute is therefore inapplicable to this appeal. Accordingly, like the circuit court, we refer to the factors that existed under the 2019-20 version of the statute.

that they wanted to have more time with their father. The court concluded it was appropriate to give weight to the children's wishes, given that the younger child was eight years old and the older child would be turning ten the following day. The court expressly rejected Lindquist's argument that the children were "too young to have meaningful input."

¶32    The circuit court then considered the children's interaction and interrelationships with their parents and other people in the parents' respective households. *See* WIS. STAT. § 767.41(5)(am)3. The court concluded that factor was "pretty much a draw," as the children had good relationships with both of their parents, with Lindquist's husband and his children, and with Anderson's significant other. The court stated that both parents "bring something a little bit different to the table," but "that's a positive for both parents."

¶33    Next, the circuit court considered the amount and quality of time that each parent had spent with the children in the past, any necessary changes to the parents' custodial roles, and any reasonable lifestyle changes that either parent proposed to make in order to spend time with the children. WIS. STAT. § 767.41(5)(am)4. Again, the court concluded this factor did not significantly favor either parent, as both parents had spent quality time with the children. While the court acknowledged that Lindquist had spent significant time with the children "in teaching and making sure that they get an education," it expressly found that Anderson had also spent quality time with the children "to the extent that he's able." The court also noted that although Anderson's work schedule was not as flexible as Lindquist's, he did have the benefit of a "predictable schedule."

¶34    The circuit court then considered the children's adjustment to home, school, religion, and community. *See* WIS. STAT. § 767.41(5)(am)5. The court

observed that the children had adjusted to traveling back and forth between Lindquist's home in Minnesota and their school in Menomonie. The court stated, however, that it was "contemplating … the fact that we could make this just a little bit simpler."

¶35 The circuit court next considered the children's ages and educational needs. *See* WIS. STAT. § 767.41(5)(am)6. The court again noted that the children were ages eight and nearly ten, respectively. The court then observed that because the children were attending school in Menomonie but spent the majority of their school-year placement time in Minnesota, "they don't have the opportunity quite as much to be involved in some extracurricular activities with the same kids they go to school with." The court also noted there was evidence in the record that the current placement schedule had made it difficult for the parties' son to be involved in Cub Scouts in Menomonie. The court reasoned that having more predictability in the placement schedule "may allow there to be more opportunity for some of those extracurricular activities."

¶36 The circuit court further observed that there was a dispute between the parties as to whether the children's educational needs would be better served by remaining in public school in Menomonie or by enrolling in a private school in Minnesota. The court noted, however, that the parties had agreed the children would remain in school in Menomonie, and "at this point that is not going to change."

¶37 Turning to the mental and physical health of the parties, *see* WIS. STAT. § 767.41(5)(am)7., the circuit court observed that it was not aware of any issues related to either party's mental or physical health, and both Anderson and Lindquist "appear to be healthy and well-adjusted adults." The court then

17

addressed the need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the children. *See* § 767.41(5)(am)8. The court observed that both parents had spent meaningful time with the children in the past, but Anderson's proposed modification of physical placement would "bring a level of predictability and stability" that had not existed before. The court also noted that even if it granted Anderson's motion, the children would still have regularly occurring and meaningful periods of physical placement with both parents.

¶38 The circuit court also considered the parties' communication and cooperation with one another, and whether each party could support the other's relationship with the children. *See* WIS. STAT. § 767.41(5)(am)10.-11. The court found that although there had been minor concerns regarding the parties' communication and cooperation, "overall the communication has been pretty good," and "both parents have done really an excellent job under the circumstances." The court further stated that both parents had been "supportive" of each other, that they had "worked together as well as they could under all of the circumstances," and that neither parent was "likely to unreasonably interfere with the [children's] continuing relationship with the other party."

¶39 The circuit court determined that the remaining statutory factors were not relevant to its decision because: (1) the availability of child care was not an issue; (2) there was no evidence of any abuse or neglect of the children, domestic abuse or interspousal battery, or drug or alcohol abuse; and (3) there was no evidence that any person residing in either parent's household had a criminal record. *See* WIS. STAT. § 767.41(5)(am)9., 12.-14. The court then concluded, based on all of the factors discussed above, that it would be in the children's best interest to grant the parties equal physical placement during the school year,

pursuant to a predictable "week on, week off" schedule. The court stated the "tipping point" for purposes of its decision was the children's expressed desire to spend more time with Anderson. The court also noted that it would be beneficial to the children to "reduce the amount of travel to some extent" and to make the placement schedule "more predictable."

¶40     The circuit court's extensive oral ruling shows that it considered the relevant statutory factors and determined that the vast majority of those factors did not strongly favor either party's position. The court ultimately concluded, however, that Anderson's proposed modification of physical placement would be in the children's best interest based on the children's desire to spend more time with Anderson, the added consistency that Anderson's proposed modification would provide, and the decreased travel time to and from the children's school. The court considered the facts of record, applied the correct legal standard, and used a logical rationale to reach its conclusion. As such, the court did not erroneously exercise its discretion. *See Culligan*, 266 Wis. 2d 534, ¶7.

¶41     In arguing to the contrary, Lindquist essentially contends that the circuit court did not give enough weight to certain factors—for instance, her flexible work schedule and her resulting ability to spend time helping the children with their school work—and gave too much weight to other factors—particularly, the children's wishes and their ability to participate in extracurricular activities. Lindquist's arguments, however, ignore our standard of review. "A [circuit] court's consideration and weighing of factors to determine what course of action is in a child's best interests is an exercise of discretion, and we may not substitute our own judgment for the [circuit] court's properly exercised discretion." *Green v. Hahn*, 2004 WI App 214, ¶27, 277 Wis. 2d 473, 689 N.W.2d 657. As such, Lindquist's belief that the court should have weighed various factors differently

when determining whether to modify physical placement provides no basis for us to reverse the court's discretionary decision.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.