COURT OF APPEALS
DECISION
DATED AND FILED

August 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2274**

Cir. Ct. No. **2024CV1871**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

MELVIN D. GRAHAM-JACKSON,

    PLAINTIFF-APPELLANT,

  V.

SANDRA MARTIN AND ROCK PRAIRIE FARMS, LLC,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: EVERETT D. MITCHELL, Judge. *Affirmed and cause remanded with directions.*

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Melvin Graham-Jackson, pro se, appeals a circuit court order that dismissed his claims against Sandra Martin and Rock Prairie Farms, LLC with prejudice.[1] We reject Graham-Jackson's arguments and affirm the order of dismissal.

¶2 Separately, the defendants' attorneys have called our attention to certain false legal citations in Graham-Jackson's opening appellate brief. More specifically, the brief contains citations to legal authority that does not exist, or that is unrelated to the proposition for which it was cited. This is a violation of WIS. STAT. RULE 809.19(1)(e) and (4)(b) (2023-24).[2] Although these issues were noted in the respondents' brief that Martin and Rock Prairie Farms filed, Graham-Jackson continued to cite false legal authority in his reply brief. We ordered Graham-Jackson to file a response with any arguments he wished to make in opposition to the imposition of sanctions under WIS. STAT. RULE 809.82(2). Having reviewed his response, we conclude that two sanctions are warranted. First, in any future appeal or other proceeding in the Wisconsin Court of Appeals, Graham-Jackson must submit an affidavit certifying that all of the legal authority that is cited in his briefs exists, is accurately cited, and relates to the propositions for which it is cited. Second, we order monetary sanctions of $500, payable to Martin and Rock Prairie Farms to defray their legal expenses, and we remand to the circuit court to enter an order imposing that monetary sanction.

---

[1] For ease of reference in this opinion, we sometimes refer to Martin and Rock Prairie Farms collectively as the "defendants." We note that Graham-Jackson disputes Rock Prairie Farms' status as a defendant in the circuit court proceeding, and we address his argument below.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

## BACKGROUND

¶3 Graham-Jackson filed this action in Dane County Circuit Court. The allegations in this lawsuit concern the ownership of and ability to control a nearly 400-acre farm in Evansville, Wisconsin (the "property"), and also concern Graham-Jackson's history and relationship with Martin.

¶4 This is not the first lawsuit to have dealt with these and related issues. As pertinent to this appeal, Rock Prairie Farms filed a prior action in 2023 to evict Graham-Jackson from the property. *See **Rock Prairie Farms LLC v. Graham-Jackson***, Rock County Case No. 2023SC3047 (filed Nov. 3, 2023) (the "eviction action"). As we discuss at greater length below, Graham-Jackson challenged Rock Prairie Farms' right to evict him—he claimed that Rock Prairie Farms was not the rightful owner of the property, and that the rightful owner was actually a trust for which he was a trustee. The circuit court rejected Graham-Jackson's claims and entered a judgment of eviction, which this court upheld on appeal. ***Rock Prairie Farms LLC v. Graham-Jackson***, No. 2023AP2371, unpublished slip op. (WI App July 11, 2024).

¶5 The disposition of the eviction action is pertinent to the arguments in the instant appeal. Therefore, before turning to the facts of the instant case, we recount the pleadings, hearing, and judgment in that action in some detail, and we also briefly summarize the dispositions of three other actions that Graham-Jackson filed in other courts.

### The eviction action and other prior litigation

¶6 Rock Prairie Farms made the following allegations in its November 2023 eviction complaint. Sandra Martin is the sole member of Rock

Prairie Farms, which owns the property. Beginning in 2021, Martin, who is Graham-Jackson's step-grandmother, allowed Graham-Jackson to reside at the property.

¶7 Martin eventually determined that she wanted Graham-Jackson to leave the property. On June 1, 2023, Rock Prairie Farms served him with a notice terminating his tenancy as of the end of June. Shortly thereafter, on June 16, 2023, Graham-Jackson executed a quitclaim deed that purported to transfer ownership of the property to an entity called "2553300 Rock Prairie," and he recorded that deed with the county register of deeds. As we understand it, 2553300 Rock Prairie is not registered as an entity with the Wisconsin Department of Financial Institutions—Graham-Jackson contends that 2553300 Rock Prairie is a trust and that he is one of its trustees.

¶8 The Rock County Circuit Court held an eviction hearing on December 11, 2023. Witnesses including Martin and Graham-Jackson testified at the hearing, and the court received certain exhibits. Among other documents, the court received a document titled "Member Agreement," which appears to have been signed by Martin on April 18, 2023, and which stated that Graham-Jackson will be the "manager" of Rock Prairie Farms and "will govern and decide all [its] business & financial affairs." The court also received the quitclaim deed that purportedly transferred the property to 2553300 Rock Prairie as of June 16, 2023.

¶9 During the hearing, Rock Prairie Farms took the position that Graham-Jackson had never been a member of Rock Prairie Farms and had no authority to act on its behalf. Rock Prairie Farms also took the position that the quitclaim deed transferring the property to 2553300 Rock Prairie was fraudulent, and the conveyance it purported to effect was invalid.

4

¶10    After the hearing, the circuit court issued a written order that granted a judgment of eviction in favor of Rock Prairie Farms.  The order expressly states that the court found that Rock Prairie Farms "is the true owner" of the property, and that "Graham-Jackson is not now, and has never been, a member of Rock Prairie Farms."  The order also states that Graham-Jackson "has no lawful basis to be on or in possession of" the property.

¶11    Following his unsuccessful attempt to defend against the eviction action, Graham-Jackson initiated numerous other actions in Rock County and Dane County against Rock Prairie Farms or Martin.  The following three actions are most notable for purposes of this appeal.

¶12    Graham-Jackson filed two different actions on behalf of 2553300 Rock Prairie that sought to evict Rock Prairie Farms from the property.  The first was captioned ***Graham-Jackson v. Rock Prairie Farms LLC***, Rock County Case No. 2023SC3514.  The Rock County Circuit Court dismissed the action based on the doctrine of claim preclusion—specifically, its prior determination in the eviction action that Rock Prairie Farms owns the property, and that neither Graham-Jackson nor 2553300 Rock Prairie own the property.  Graham-Jackson did not appeal.  The second case was captioned ***2553300 Rock Prairie v. Rock Prairie Farms LLC***, Dane County Case No. 2024SC2210, and again sought to evict Rock Prairie Farms from the property.  The Dane County Circuit Court granted Rock Prairie Farms' motion to dismiss and dismissed the case with prejudice.  Graham-Jackson appealed to this court, and his appeal of Case No. 2024SC2210 was still pending when he filed the lawsuit that is at issue here.  That appeal was eventually dismissed when Graham-Jackson failed to file an appellant's brief.  ***2553300 Rock Prairie v. Rock Prairie Farms LLC***, No. 2024AP920, unpublished op. and order (WI App Aug. 16, 2024).

¶13     The final action that is notable for our purposes here was captioned ***Graham-Jackson v. Martin***, Dane County Case No. 2024CV631.  In that action, Graham-Jackson filed a petition seeking a harassment injunction against Martin. In so doing, he repeated his claims about his ownership and right to control the property, and he also made a number of allegations about physical and sexual abuse, defamation, and wrongful arrest that are also at issue in the instant appeal. The circuit court dismissed Graham-Jackson's petition after concluding that there were no genuine issues of material fact and that Martin was entitled to dismissal as a matter of law.  Graham-Jackson appealed.  Although his appeal of Case No. 2024CV631 was still pending when he filed the lawsuit at issue here, it was dismissed after he failed to file an appellant's brief. ***Graham-Jackson v. Martin***, No. 2024AP586, unpublished op. and order (WI App Sept. 27, 2024).[3]

## This action

¶14     This action, filed in Dane County Circuit Court, is one of Graham-Jackson's more recent lawsuits that address matters related to his alleged ownership and ability to control the property, as well as his history and relationship with Martin.  Graham-Jackson's original complaint in this action identified Rock Prairie Farms, LLC and Sandra Martin as defendants.  It alleged the following claims against both defendants: wrongful eviction, wrongful arrest, trespassing, malicious prosecution, harassment, battery, defamation, breach of

---

[3] Graham-Jackson has also filed several other lawsuits that address these and similar issues, but are not directly pertinent to our resolution of the issues on appeal.  To the best of our knowledge, these lawsuits include Dane County Case Nos. 2023CV3055 (contract case against Martin), 2023CV3360 (domestic violence restraining order against Martin), 2024CV341 (domestic violence restraining order against Martin), and 2024CV3419 (declaratory judgment against Martin).

6

contract, theft, an "action of possession" under WIS. STAT. § 843.01, and an action under "Chapter 183 Uniform Liability Company Law." Graham-Jackson attached various documents as exhibits to the original complaint, including the June 16, 2023 quitclaim deed that Graham-Jackson purportedly signed on behalf of Rock Prairie Farms.

¶15 The defendants filed a motion to dismiss the original complaint. They argued that the claims for wrongful eviction, wrongful arrest, and trespassing were barred by the doctrines of issue and claim preclusion. They argued that the claims for harassment, battery, defamation, breach of contract, and theft, among others, were barred under WIS. STAT. § 802.06(2)(a)10 because there were other pending actions between the same parties for the same causes of action. And they argued that the claims for malicious prosecution and for relief under WIS. STAT. ch. 183 and WIS. STAT. § 843.01 should be dismissed under § 802.06(2)(a)6. because they failed to state a claim.

¶16 The circuit court entered a scheduling order directing a response and a reply on the motion to dismiss, but Graham-Jackson did not file a response in opposition to the motion. He instead filed an amended complaint, which purported to withdraw all of the claims that he originally filed against Rock Prairie Farms. The amended complaint alleged the following claims from the original complaint, but this time only against Martin: malicious prosecution, harassment, battery, defamation, breach of contract, and theft. The amended complaint also added two new claims against Martin: assault and a claim under the Wisconsin

Fair Employment Act.[4]   The amended complaint did not include any claims against Rock Prairie Farms.

¶17   The attorneys for the defendants filed a letter notifying the circuit court of their position regarding the effect of the amended complaint.  Among other things, they stated that Graham-Jackson could not dismiss Rock Prairie Farms at this stage of the proceeding without prejudice unless Rock Prairie Farms consented, which Rock Prairie Farms would not do.  *See* WIS. STAT. § 805.04.

¶18   The defendants also filed a reply in support of their motion to dismiss, and, eventually, an answer to the amended complaint.  In that answer, the defendants alleged that the claims in the amended complaint should be dismissed for many of the same reasons that the original complaint should have been dismissed (that is, issue and claim preclusion and failure to state a claim).  The defendants asked the circuit court to enter a judgment dismissing all claims against them with prejudice.

¶19   Graham-Jackson also filed various documents and requests with the circuit court.  Among other things, he asserted that Martin was incompetent and asked the court to appoint a guardian ad litem for Martin.  He filed a motion for default judgment against Martin because, he asserted, the answer to the amended complaint was untimely.  And he filed a motion to strike the answer, both on timeliness grounds and because, he asserted, Martin had "incorrectly included … Rock Prairie Farms LLC (Defendant), who was previously withdrawn from the

---

[4] The amended complaint also withdrew some of the claims that Graham-Jackson had originally filed against Martin—it did not include the claims for wrongful eviction, wrongful arrest, or trespassing, or the claims under WIS. STAT. ch. 183 and WIS. STAT. § 843.01.

case, and should not be included in defendants['] reply to the amended summons and complaint."

¶20   The circuit court held two hearings: the first on October 9, 2024, and the second on November 4, 2024.  The transcript of the October 9 hearing was not made part of the appellate record, but based on docket entries, we understand that the court agreed to appoint a guardian ad litem for Martin, at least provisionally, and to set the matter over for several weeks.  Based on a subsequent circuit court order, we also understand that counsel for the defendants "orally amended" the previously filed motion to dismiss "to apply to the [a]mended [c]omplaint, and offered argument" about why the motion to dismiss should be granted.

¶21   When the hearing was reconvened on November 4, the appointed guardian ad litem was present and gave the opinion that there was not any need in the proceeding to address Martin's competency.   After hearing additional arguments on the motion to dismiss, the circuit court concluded that, based on its review of documents filed in the prior litigation in Rock County and Dane County, "it seems as though this case … has been completely litigated, almost to the point of exhaustion," and that there was not "any new issue that is being raised here that is different than what has been litigated in another court."  The court also noted that Graham-Jackson had not been able to provide factual support for his claims against Martin in the other cases, and that there were not any "more issues … which this Court needs to be able to address factually that [have not] already been addressed in other cases."

¶22   The circuit court entered a written order dismissing the claims with prejudice.  Graham-Jackson appeals.

## DISCUSSION

¶23 We first address the arguments that Graham-Jackson makes on appeal, and we then address his citation to false legal authorities and our decision to impose sanctions for that conduct.

## I.

¶24 On appeal, Graham-Jackson argues that the circuit court made various procedural errors in the course of addressing his case, and he also argues that the court's determination that some of his claims are barred by the doctrine of claim preclusion is erroneous. We address the developed arguments as best we understand them and to the extent that Graham-Jackson has preserved his arguments in the circuit court and in his opening brief.[5] We will not reverse a judgment if the circuit court did not err, or if any error made by the court was harmless, meaning that it did not affect Graham-Jackson's substantial rights. *See* WIS. STAT. § 805.18; *Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698.

---

[5] Although we make some allowances for the failings of parties who, as here, are not represented by counsel, "[w]e cannot serve as both advocate and judge," and we need not consider Graham-Jackson's arguments to the extent that they are unsupported by adequate factual and legal citation or are otherwise undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We also need not address any arguments that Graham-Jackson made in his opening appellate brief that he did not properly preserve in the circuit court. *See Green v. Hahn*, 2004 WI App 214, ¶21, 277 Wis. 2d 473, 689 N.W.2d 657 ("Except in rare circumstances that are not present here, we will not address an issue that an appellant raises for the first time on appeal.").

We note that Graham-Jackson's reply brief cites additional legal authorities and raises new arguments that were not made in his opening brief. We need not address these additional authorities or arguments because "as a general rule," we do not "consider issues raised by appellants for the first time in a reply brief." *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981).

**A.**

¶25     Graham-Jackson first argues that the circuit court erred by "failing to recognize the superseding amended complaint he filed pursuant to WIS. STAT. § 802.09." That statute provides that a plaintiff may amend a complaint "once as a matter of course at any time within 6 months after the summons and complaint are filed …." § 802.09(1). As we understand it, Graham-Jackson's argument is that he had the statutory right to amend his complaint by withdrawing all of his claims against Rock Prairie Farms, and that by withdrawing Rock Prairie Farms as a defendant in this action, Graham-Jackson could avoid the effect of claim preclusion on his claims against Martin. This argument is unfounded.

¶26     It is true that, generally speaking, a plaintiff may amend a complaint one time within six months without seeking leave from the court. *See* WIS. STAT. § 802.09. It is also true that, generally speaking, an amended complaint supersedes an original complaint. However, as the defendants pointed out both in the circuit court and on appeal, once a defendant files a pleading that responds to the complaint, the plaintiff is no longer entitled to unilaterally dismiss that defendant from the action without prejudice. WIS. STAT. § 805.04(2); *see also **Gowan v. McClure***, 185 Wis. 2d 903, 913, 519 N.W.2d 692 (Ct. App. 1994). Therefore, once Rock Prairie Farms filed its motion to dismiss, Graham-Jackson no longer had the right to unilaterally dismiss Rock Prairie Farms as a defendant

11

by amending his complaint, even if he wished to do so within the timeframe that was otherwise set by § 802.09(1).[6]

¶27　As to the action against Rock Prairie Farms, the circuit court dismissed it with prejudice pursuant to WIS. STAT. § 805.04(2), which allows a court to dismiss an action "at the plaintiff's insistence … upon such terms and conditions as the court deems proper." Dismissal with prejudice was appropriate, both because the original complaint's claims against Rock Prairie Farms were barred by claim and issue preclusion, and also because Graham-Jackson no longer wished to pursue those claims in his amended complaint.

¶28　As to the claims against Martin, Graham-Jackson was entitled to amend those claims by filing the amended complaint. Yet, as discussed, the defendants took the position that the claims in the amended complaint were also precluded by issue and claim preclusion, and the circuit court agreed with that position. Contrary to Graham-Jackson's argument, it is evident that the court considered all of the claims that Graham-Jackson advanced in this litigation when it determined that Martin was entitled to dismissal with prejudice, including but not limited to the claims that Graham-Jackson made in the amended complaint. We therefore reject Graham-Jackson's argument that the court failed to appropriately recognize the amended complaint.

---

[6] Graham-Jackson cites some non-existent authorities to argue for a contrary rule. We need not address arguments that are unsupported by legal authority, *see Pettit*, 171 Wis. 2d at 646-47, and we consider arguments premised on false legal citations as unsupported by legal authority within the meaning of *Pettit*.

**B.**

¶29    Graham-Jackson next argues that his claims against Martin are not barred by the doctrine of claim preclusion.  His arguments about claim preclusion appear to be limited to the claims in this litigation that relate to the ownership and right to control the property.  That is, Graham-Jackson does not make any argument about claim preclusion with respect to the remaining claims that he brought in the circuit court that concern his history and relationship with Martin.  Nor does he make any argument with respect to issue preclusion.

¶30    We take Graham-Jackson's failure to develop an argument about issue preclusion as a tacit concession that the circuit court correctly granted the motion to dismiss to the extent that it relied on that ground.  *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (it is a tacit concession when an appellant ignores a ground on which the circuit court ruled).  We focus our analysis on Graham-Jackson's arguments about claim preclusion, and specifically, whether the eviction action filed by Rock Prairie Farms has a preclusive effect on his claims in this litigation that relate to the true ownership of the property.

¶31    Generally speaking, the doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences. *Kruckenberg v. Harvey*, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879. Claim preclusion "has three elements: (1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." *Id.*, ¶21.  The doctrine is "designed to draw a line

13

between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." ***Northern States Power Co. v. Bugher***, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (citation omitted). It recognizes that "after a party has had his day in court, justice, expediency, and the preservation of the public tranquility requires that the matter be at an end." ***Kruckenberg***, 279 Wis. 2d 520, ¶20.

¶32 On appeal, Graham-Jackson appears to argue that the eviction action does not have a preclusive effect because there is not identity between the parties. He points out that the parties in the eviction action were himself and Rock Prairie Farms, but here, the parties are himself and Martin. Yet, as defendants point out in their respondents' brief, it is sufficient for there to be "identity between the parties *or their privies* in the prior and present suits," ***Pasko v. City of Milwaukee***, 2002 WI 33, ¶14, 252 Wis. 2d 1, 643 N.W.2d 72 (emphasis added, citation omitted), and "[p]rivity exists when a person," here Martin, "is so identified in interest with a party to former litigation" here Rock Prairie Farms, that the person "represents precisely the same legal right in respect to the subject matter involved." ***Id.***, ¶16. As applied here, Martin is the sole member of Rock Prairie Farms, and she argues that her interest in protecting Rock Prairie Farms' ownership of the property is the same as Rock Prairie Farms' interest in that issue. Graham-Jackson does not address this standard from ***Pasko***, nor does he make any argument to the contrary. We therefore conclude that the circuit court did not err

when it determined that the eviction action had preclusive effect with respect to the ownership and ability to control the property.[7]

¶33    Having made this determination, we need not address the preclusive effect of the two subsequent eviction actions that Graham-Jackson pursued on behalf of 2553300 Rock Prairie (Rock County Case No. 2023SC3514 and Dane County Case No. 2024SC2210).  Even so, for the sake of completeness, we briefly address Graham-Jackson's argument about those two actions.

¶34    In both actions, Graham-Jackson attempted to evict Rock Prairie Farms from the property, and the circuit courts dismissed the claims based on Rock Prairie Farms' established ownership of the property.  Graham-Jackson argues that these two actions do not give rise to claim preclusion because there was no final judgment in either case, but Graham-Jackson is mistaken.  The final judgments in both cases were attached to an affidavit that was filed in this case well in advance of the hearing, and the court properly took judicial notice of the existence and content of those judgments.  *See* WIS. STAT. § 902.01 (judicial notice).  Graham-Jackson may be arguing that those judgments were not final

---

[7] We briefly mention an argument that Graham-Jackson could have made, but did not make, about the application of claim preclusion under these facts.  Specifically, Graham-Jackson could have argued that claim preclusion does not apply because he is a plaintiff in this action and was a defendant who did not file a counterclaim in the original eviction action.  Had Graham-Jackson made that argument, we would have rejected it.

It is true that the general application of claim preclusion is "to a plaintiff in a second action who was also a plaintiff in the first action, to a plaintiff in privity with the plaintiff in the first action, or to a counterclaiming defendant who did not prevail in the first action."  *See* ***Wickenhauser v. Lehtinen***, 2007 WI 82, ¶23, 302 Wis. 2d 41, 734 N.W.2d 855.  However, we will apply claim preclusion to a non-counterclaiming defendant from the first action if the "common-law compulsory counterclaim rule applies."  ***Id.***, ¶¶25-27.  This rule applies if "all the elements of claim preclusion are present," and "the claim in the second suit, if successful [would] nullify the first judgment or impair the rights established in the first action."  ***Id.***, ¶27.  That appears to be the case here.

15

because he abandoned the appeals he filed of the final judgments that were entered by the circuit courts in those cases—if so, he does not cite any legal authority to support that argument, which is based on a misunderstanding of law.

## C.

¶35 Graham-Jackson next argues that the circuit court erred when it failed to enforce statutory deadlines. The argument appears to be about the defendants' answer to the amended complaint, which was filed 45 days after Graham-Jackson filed his amended complaint. But Graham-Jackson does not identify any applicable statutory deadline that the defendants missed with this filing.

¶36 Graham-Jackson cites WIS. STAT. § 802.06(1)(a), which provides that, "if the court denies [a] motion [to dismiss] or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action." Graham-Jackson may be asserting that this statute is applicable because the circuit court denied or postponed ruling on the motion to dismiss at the October 9, 2024 hearing. If so, this argument is mistaken. The court did not deny the motion at the October 9 hearing, nor did it "postpone[] its disposition until a trial on the merits." *See* § 802.06(1)(a). Instead, the court set over its decision until the following month so that a guardian ad litem could be appointed for Martin at Graham-Jackson's request.

¶37 Graham-Jackson also cites WIS. STAT. § 802.09(1), which provides deadlines for the answer when an amended complaint is filed. But the unambiguous text of § 802.09(1) demonstrates that the answer was timely. That statute provides a 45-day deadline to answer an amended complaint if any of the claims in the original complaint "is founded in tort," and here, the original and

16

amended complaints both allege tort claims—battery and defamation. Accordingly, the answer, which was filed on the 45th day, was timely under § 802.09(1).[8]

### D.

¶38    Graham-Jackson next argues that the circuit court erred with respect to his motion to determine Martin's competency.  Specifically, Graham-Jackson argues that the court was required to make a judicial determination about Martin's competency, and that the court erred by instead deferring to the guardian ad litem's opinion that Martin's competency need not be addressed in this proceeding.  This argument fails because Graham-Jackson does not cite any authority requiring the court to make a judicial determination of competency in a civil case like this.

¶39    Graham-Jackson primarily relies on WIS. STAT. § 971.13 and *State v. Garfoot*, 207 Wis. 2d 214, 58 N.W.2d 626 (1997).  Generally speaking, those authorities provide that the State cannot criminally prosecute a person who is not competent to stand trial.  *See Garfoot*, 207 Wis. 2d at 216-17.  If there is a question about a criminal defendant's competency, the circuit court must make a

---

[8] In a related argument, Graham-Jackson contends that the circuit court erred by not considering the motion to strike that Graham-Jackson filed the morning of the November 4, 2024 hearing.  But the primary subject of the motion to strike was the defendants' answer to the amended complaint, and the grounds for the motion was Graham-Jackson's assertion that the answer was untimely.  The court did not disregard Graham-Jackson's motion—the transcript of the hearing shows that the court explicitly considered his argument about timeliness and unequivocally rejected it.  As we have explained, we agree with that conclusion.

To the extent that Graham-Jackson means to argue that the circuit court failed to consider any other argument or request he made in his November 4, 2024 filing, we reject any such argument as undeveloped.

judicial finding of competence as a prerequisite to proceeding with the criminal prosecution. *Id.* at 221-22. These authorities plainly address competency in the criminal context, and Graham-Jackson does not point us to any authority that states that these rules also apply to civil actions.

¶40 To be sure, Graham-Jackson cites WIS. STAT. § 807.10 and *Kainz v. Ingles*, 2007 WI App 118, 300 Wis. 2d 670, 731 N.W.2d 313, both of which provide that a guardian ad litem may make or approve a settlement in a civil action if the settling party is a minor or is an individual that has been adjudicated incompetent. That statute and case address important issues that could arise in some cases, but they are wholly immaterial here—nobody is seeking to settle any claims in this litigation. Graham-Jackson also cites WIS. STAT. ch. 54 and cases that address guardianships under that chapter, but those statutes and cases are inapt because this is not a guardianship proceeding.

¶41 Instead, the issue here is whether the circuit court was entitled to consider the civil claims that Graham-Jackson filed against Martin and to dismiss them with prejudice. Graham-Jackson does not cite any legal authority that would allow him to delay the court's resolution of Martin's motion to dismiss while he questions her competency.

**E.**

¶42 Graham-Jackson next argues that the circuit court erred by failing to provide an explanation in its order for dismissing his claims, and that such explanation is required by WIS. STAT. § 806.01(1)(b) and (c). This argument fails for at least two reasons. First, there is no provision in § 806.01 that requires a court to articulate a specific rationale for dismissing claims as part of its judgment. Second, it is apparent that Graham-Jackson understood the court's rationale for

dismissing the claims sufficiently well enough to take aim at the court's conclusions about the doctrine of claim preclusion in his appellant's brief.

**F.**

¶43    Finally, Graham-Jackson makes a number of assertions in his reply brief about the motivations of the attorneys and the law firm that are currently representing the defendants.  He seems to be arguing that the defendants' law firm is conducting an "unlawful takeover of Rock Prairie Farms LLC," and that the law firm's goal is to separate Martin from Graham-Jackson, who is the only person who is motivated to look out for Martin's best interest.  Graham-Jackson's position on these topics is questionable at best—there is evidence in the record that would support a finding that, to the extent Martin is vulnerable to psychological coercion, it is Graham-Jackson, rather than the lawyers who represent her, who has attempted to take advantage of that vulnerability.  But we are not a factfinding court, and our resolution of this appeal does not turn on an inquiry into anyone's motivation.  The issue here is whether the claims were properly dismissed, and we conclude that they were.  To the extent that Graham-Jackson is concerned about Martin's well-being, there are agencies in Wisconsin that address allegations regarding the manipulation and abuse of vulnerable individuals.

¶44    For all of these reasons, we conclude that the circuit court properly dismissed the claims against Martin and Rock Prairie Farms with prejudice.[9]

---

[9] To the extent that Graham-Jackson means to make any other argument in his briefing, we reject it because any such argument is undeveloped, because the legal authority Graham-Jackson cites as support for the argument does not say what he says it says, or because the argument is raised for the first time in his reply brief. *See supra*, n.5.

**II.**

¶45    We now turn to the false legal citations that are contained in Graham-Jackson's opening appellant's brief and in his reply brief.  As noted, some of the citations in these briefs are to legal authorities that do not exist, and other citations are to legal authorities that exist but are wholly unrelated to the proposition for which they were cited.  Graham-Jackson's inclusion of false legal citations in his appellate briefing violates WIS. STAT. RULE 809.19(1)(e) and (4)(b).

¶46    After reviewing Graham-Jackson's briefing, we issued an order directing him to address these violations.  We explained that, given the serious nature of Graham-Jackson's violations of this court's briefing rules, we were inclined to impose the following sanctions:

> (1) a $1,000 penalty, payable to [Martin and Rock Prairie Farms], to offset their expenses in responding to Graham-Jackson's false legal citations; and (2) an order that would require Graham-Jackson, in any future appeal or proceeding in this court, to submit an affidavit certifying that all of the legal authority that is cited in his briefs exists, is accurately cited, and relates to the propositions for which it is cited.

Both sanctions are authorized by WIS. STAT. RULE 809.83(2), which provides broad authority to sanction a party for failure to comply with this court's rules.[10] And, in support of the second proposed sanction, we also cited ***State v. Casteel***,

---

[10] Specifically, WIS. STAT. RULE 809.83(2) provides that the "[f]ailure of a person to comply with … a requirement of [rules found in WIS. STAT. ch. 809] … is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate."

20

2001 WI App 188, ¶23, 247 Wis. 2d 451, 634 N.W.2d 338 ("A court may exercise its inherent power to ensure that it 'functions efficiently and effectively to provide the fair administration of justice,' and to control its docket with economy of time and effort." (citation omitted)).    Before imposing any sanction, we sought Graham-Jackson's input.

¶47    Graham-Jackson filed a timely response, and his response appears to express contrition.  He asks us to take into account that he is not a licensed attorney, that he is proceeding pro se, and that he is indigent.  He states:

> Any errors in legal citation were not made in bad faith or with intent to mislead the Court or the respondents.  I now understand that some citations may have been inaccurate or not fully on point.  That was not intentional.  I relied on public legal databases, secondary resources, and independent research.

¶48    We are mindful of the challenges faced by self-represented litigants, and we will, when appropriate, hold the documents they draft to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  At the same time, self-representation does not grant "a license not to comply with relevant rules of procedural and substantive law." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).  Like attorneys, "a pro se litigant is required to make a reasonable investigation of the facts and the law" before filing an appellate brief.  *Holz v. Busy Bees Contracting, Inc.*, 223 Wis. 2d 598, 608, 589 N.W.2d 633 (Ct. App. 1998).

¶49    The contrition expressed in Graham-Jackson's response comes too late to count for all that much.  Graham-Jackson was put on notice of the fact that his brief contained citations to nonexistent authorities by the respondents' brief that Martin and Rock Prairie Farms filed in this appeal.  It would have gone a long

way for Graham-Jackson to acknowledge and correct this error in his reply brief. At a minimum, we would have expected him to have taken care to not repeat the rule violations in his reply brief. But that is not what happened. Graham-Jackson instead filed a reply brief that perpetuated his violations with additional false citations, beyond those contained in his opening brief.

¶50     Graham-Jackson's violations come with a cost, which takes the form of shifting work to other players in the legal system. Martin and Rock Prairie Farms state that their counsel was forced "to expend time and effort tracking down all of this non-existent precedent." Graham-Jackson's actions have also created significant unnecessary work for the court system, which comes at the expense of work that court staff could have done on other appeals involving other litigants.

¶51     Under the circumstances, based on our inherent power and the holding of *Casteel*, 247 Wis. 2d 451, ¶23, we conclude that it is appropriate to require Graham-Jackson, in any future appeal or other proceeding in this court, to submit an affidavit certifying that all of the legal authority that is cited in his briefs exists, is accurately cited, and relates to the propositions for which it is cited.[11]

_____

[11] In their respondents' brief, the defendants argue that Graham-Jackson's appeal is wholly frivolous, and they ask us to order additional sanctions that "include a ban on further litigation over claims arising prior to the filing of these many lawsuits and appeals." *See Minniecheske v. Griesbach*, 161 Wis. 2d 743, 748, 468 N.W.2d 760 (Ct. App. 1991) ("A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court."). Although some restrictions on Graham-Jackson's access to courts may be warranted, we decline this request at this point for two reasons. First, although we have inherent authority to place restrictions on Graham-Jackson's ability to file appeals and writs in this court, most new litigation would originate in the circuit court and the defendants do not identify any similar source of inherent authority over circuit court filings. Second, any order imposing such restrictions must be drafted narrowly to strike the right balance between competing interests, including Graham-Jackson's "access to the courts, the [defendants'] interest in res judicata, the taxpayers' right not to have frivolous litigation become an unwarranted drain on their resources[,] and the public interest in

(continued)

¶52    Turning to the issue of monetary sanctions, Graham-Jackson asks us to consider his indigency status as we decide the appropriate penalty.  It is true that we have waived various filing fees due to Graham-Jackson's claim of indigency.  Yet, we have already considered Graham-Jackson's claim of indigency, which factored into our proposed sanction of $1000 rather than some larger amount.  To be clear, a larger sanction could easily be justified given the gravity of Graham-Jackson's violations.  However, in light of Graham-Jackson's expressed contrition and our hope that that the deterrence objective of a monetary sanction will be served by a smaller amount, we will impose a monetary sanction of $500.  We remand this matter to the circuit court and direct the court to enter an order imposing a sanction of $500, payable to Martin and Rock Prairie Farms, to defray a portion of their legal expenses.

## CONCLUSION

¶53    For the reasons discussed above, we affirm the circuit court order dismissing Graham-Jackson's claims against Martin and Rock Prairie Farms.  We order two sanctions for Graham-Jackson's violations of WIS. STAT. RULE 809.19(1)(e) and (4)(b).  First, in any future appeal or other proceeding in the Wisconsin Court of Appeals, Graham-Jackson must submit an affidavit certifying that all of the legal authority that is cited in his briefs exists, is accurately cited, and relates to the propositions for which it is cited.  Second, we order monetary sanctions of $500, payable to Martin and Rock Prairie Farms.  We

---

maintaining the integrity of the judicial system." ***Id.*** at 749.  The defendants have not provided any draft language that is aimed at satisfying that balance.

23

remand to the circuit court with directions to enter an order imposing that monetary sanction.

*By the Court.*—Order affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.